SAMUEL SPANGLER *et al.*, Relators, *v.* THE COUNTY COURT OF CLARK COUNTY, Respondent.

1. *Clark county — Removal of county seat — Construction of Sess. Acts 1865, p. 312, and R. C. 1855, p. 514, ch. 45.*— It would seem to have been the obvious purpose of the Legislature, in the sixth section of the act to re-locate the county seat of Clark county (Sess. Acts 1865, p. 312), to adopt the machinery provided by the act of 1855 (R. C. 1855, p. 514, ch. 45), where that machinery was not superseded by the express provisions of the former act. The two acts taken together must be understood and construed as providing that the County Court of Clark county should act on the petition of a majority of the legal voters of that county, and appoint five commissioners to select a site for the public buildings "within two miles of said town of Cahoka," and to do whatever else the act of 1855 required of them, not at variance with the act of 1865; and that when the commissioners had made the selection, and discharged the duties devolved upon them in this behalf, the County Court should order the removal of the county seat to the selected locality.

*Petition for mandamus.*

*J. G. Blair*, for relators.

*Matlock*, and *Dryden, Lindley & Dryden*, for respondent.

CURRIER, Judge, delivered the opinion of the court.

This is a petition for a peremptory *mandamus* requiring the County Court of Clark county to make an order appointing five commissioners to " select a site * * whereon to locate the seat of justice of said county, and to discharge the duties" enjoined upon it by an act of the Legislature, passed February 20, 1865 (Sess. Acts 1865, p. 312), which act is set out in full in the petition.

The petition recites, substantially, that a majority of the legal voters of the county petitioned the court to make the removal contemplated by the act, and that the court, being satisfied that the act had been complied with in this respect, on the 7th day of April, 1865, made and entered of record an order of removal, and appointed a commissioner to receive donations of, or acquire by purchase, lands whereon to erect public buildings; that on the 8th day of June thereafter the court removed this commissioner and annulled his authority; that on the 3d day of February, 1869, the relators, being tax-payers, etc., of the county, applied to the court, in due form, for the appointment of five commissioners to select a site whereon to locate the public buildings and fix the seat of justice, as provided by the act of 1855 (R. C. 1855, p. 514, § 1); and that the court, by an order, of record, overruled the application and declined to make the appointment.

These are the material recitals and averments of the petition.

To this petition a demurrer is interposed, and the question is thus raised whether the petition states facts sufficient to justify the issue of the writ. That depends upon the construction to be given to the act of 1865 recited in the petition. This act (1865, p. 312, § 1) authorizes the County Court of Clark county to " remove the county seat   *   *   from Waterloo to Cahoka, or to within two miles " of the latter place, " whenever a majority of the legal voters of said county, by petition, shall require the same to be done." The only other provision of the act bearing on this subject is contained in the sixth section, which declares that the act to provide for the removal of seats of justice, approved November 20, 1855 (R. C. 1855, p. 514), " so far as the same may be applicable, and not inconsistent with the act [of 1865], shall be in force and apply to the new county seat, and the County Court shall be in like manner governed thereby."

The first section of the act of 1855, thus referred to, provides that " whenever three-fifths of the taxable inhabitants of any county * * shall petition the County Court, praying the removal of the seat of justice thereof to a designated place, the court shall appoint five commissioners to select a site whereon to locate the seat of justice." The rest of the act is largely occupied in

defining the duties of these commissioners, and directing them therein. They are authorized to receive donations and make purchases of land, and to select the most suitable place "whereon to erect the public buildings;" but their selection of a locality for the public buildings is made subject to a popular vote, the machinery of which the act provides.

By comparison of the two acts it is found that one requires the County Court to act on the petition of "three-fifths of the taxable inhabitants" of the county; the other, on the petition of a "majority of the legal voters." By one a popular election is to finally determine the site of the new seat of justice; by the other, the County Court is empowered to make the removal without the intervention of such election. These are the material differences between the two acts, as respects the manner of effecting the proposed removal. The act of 1865 is obscurely and inaptly drawn, but it would seem to have been the purpose of the Legislature, in the sixth section of the act, to adopt the machinery provided in the act of 1855, where that machinery was not superseded by the express provisions of the former act. This section declares that the County Court shall be "governed" by the latter act so far as the same may be "applicable and not inconsistent" with the act of 1865. What was the purpose of that section if it was not intended thereby to adopt the provisions of the act of 1855 in regard to the appointment and duties of the five commissioners? They seem neither inapplicable to nor inconsistent with the act of 1865, but quite necessary to the full and most beneficial accomplishment of the purposes of that act.

The two acts taken together, as it seems to us, must be understood and construed as providing that the County Court of Clark county should act on the petition of a majority of the legal voters of that county, and appoint five commissioners to select a site for the public buildings "within two miles of said town of Cahoka," and to do whatever else the act of 1855 required of them, not at variance with the act of 1865; and that when the commissioners had made the selection, and discharged the duties devolved upon them in this behalf, the County Court should order the removal of the county seat to the selected locality. This inter-

pretation gives practical effect to the act of 1865, accomplishes its object beneficially, and sacrifices no rights.

In this view of the case, the demurrer must be overruled and the issue of the writ ordered. The other judges concur.